Good morning, good morning. May it please the court. My name is Marcy Hamilton and I represent the appellants in this case. This case is about whether a city can direct the city employees to create a zoning scheme that is intended to protect one religious entity. It is about lawmaking for a religious organization behind closed doors. The court below was required to consider the allegations as true. It actually trivialized the single most important allegation and that's the allegation that the city directed its employees to craft a zoning scheme and approach that would make it possible for the Chabad to locate on a single property. Those facts were not made available to my clients until after the zoning was completed. So what we are challenging is the zoning that was the result of the illegal collusion. This is where you can help me understand exactly what it is you're challenging and exactly what the relief that you're seeking would be. If I have this right, I understand that what you're challenging is, as applied here, they gave these zoning variances or deviations, call them what you will, to the Chabad to build a particular plot on a seaside village, right? They gave them the zoning change that they then gave them approvals on. Right. So they had the approval to build the Chabad, the museum, whatever parking structure they had at a certain height on a specific location in Seaside Village. And what you're saying is you are challenging that. We are challenging the original zoning that changed... I don't know what that means when you're challenging the original zoning. Are you talking about the application of that application? No, it's the very enactment of changing the zoning of this plot so that it made it possible for a house of worship to locate there. Right. That happens in one of two ways. The city passes 5040. In and of itself, it means nothing to you until the Chabad comes back and says to the city, we want to build on this location in this way. And then the city turns around and says, OK, you can do that. Here are the zoning alterations you need. And here is the permission you're getting. Right. That's what you're challenging. Right. And all the approvals that occurred are the proof because they were illegal. They're the proof. Let me let me just sort of reframe my question sort of in legal terms. You're not seeking a facial challenge on 5040 itself. Not at all. No. What you're seeking is the application of 5040 to this request and to the variances that were given that enabled them to get it. Well, we're saying that 5040 was enacted unconstitutionally because it was the result of an agreement between the Chabad and the city that was. I understand that. But I guess let me rephrase my question. You can be either mounting essentially an as applied constitutional challenge. Or you could be saying something more and different, which is I'm challenging facially the ordinance as opposed to its application here. I thought it was the latter that you were doing, but I want to be sure that I have that right. Our argument. Do I have that right? You do. It is an as applied challenge, but it's as applied as to the zoning change that affects this piece of property. Gotcha. Okay. Now, what is the relief you're seeking now that we've identified the wrong? What is the relief that you want when I read your complaint? And then I list listened to your arguments in the briefs and then in the supplementals that we asked you to address, I understood you to be saying. In the complaint, you say one, we want an injunction barring them from going forward with that project at that location in that form. That's prospective relief. We want an injunction. Two, you said in your complaint, we want damages, economic damages, compensatory and punitive damages. That's in the complaint itself. And three, we want a declaration that this project's no good. It violates the establishment clause. Then when I read your subsequent briefing, it seemed that you abandoned any economic remedy. You're not seeking any dollars and cents, compensatory or punitive, that your relief was prospective and injunctive in nature and declarative in nature. Do I have that correct? Yes, and the shift is due to the Royal Palms case, which invalidated all of the approvals. Okay, so now that we've zeroed in, what it is, the relief you're seeking, tell me why that has not since become moot. And the reason I raise it is because the appellate division of the circuit court in Palm Beach, 15th Judicial Circuit, unambiguously enters an order. And in it, they say the petition for the writ of certiorari is granted. The resolution is quashed. The resolution was the approval of the site, granting them the technical deviation and allowing them to build on that site. The resolution is quashed, and the matter is remanded to the court. An appeal was taken, or a certiorari application, was filed with the 4th DCA. And on the 15th of November, 2016, the 4th DCA says the petition for a writ of certiorari is denied. The request for oral argument is denied. No application for cert review by the Florida Supreme Court was filed, if I have that right. So you have a final judgment from the circuit court killing this project, this application, on this site. If I have that right, and I think I do, it's as clear as can be, then why isn't the case moot to the extent that you are seeking injunctive relief? A prospective rule from this court barring the city from allowing that project to go forward in that form on that site. Okay. So there are two aspects of the case. One is that 5040 was enacted for the purpose of changing the B1 zoning on this property and elsewhere, but this is an as-applied challenge. On this property, the B1 zoning was changed to open it to houses of worship. We are challenging the fact that 5040 was enacted for the benefit of a single religious entity, and it changed it from a B1 where they would not be able to locate to a house of worship possibility. But to the extent the application- But that's separate. Bear with me. It's an as-applied challenge. We've already established it's not a facial challenge on the ordinance. It's as-applied. You're saying they shouldn't be allowed to build there, stop them from building there, and join them. The circuit court gave you that relief. We're not- What could I say other than- What kind of redress could I give you other than saying you can't build there? Admittedly, you can't anyway for reasons independent of anything I'm saying. Doesn't that make anything this court would say purely advisory? What we're saying is that 5040 may not be applied to this property because it was illegally obtained through the system because of the city's collusion with- Let's assume that's correct. The relief you're seeking is to stop the project. You got that. No, the relief we're seeking is that this property no longer be zoned to permit places of public assembly, that it go back to the B1 zoning, and if- Why wouldn't I wait until another application comes in to build something else on that site, whether it be a house of worship or a public assembly? They're two separate- How would that issue be ripe? Because zoning is separate from the approvals from the variances. What's happened is the variances have now been wiped off, but the zoning is still illegal for my clients. Even assuming, Arguendo, that's true as an abstract proposition, I'm hard-pressed to see how you sustain any harm that makes it justiciable until somebody comes back and says on round two or three, we want to build on that site or maybe somewhere else in Seaside Village, at which point it would seem to me that maybe it had ripened. You follow the concern that I have? I completely follow it, and I see my time's up. That's all right. You take your time. So our argument, I will admit, is novel, but it is grounded in Establishment Clause principles. Our argument is that the city may not enact a zoning change in concert with a religious entity behind the scenes. This was a manufactured zoning change. Let's assume, for the purpose of my question, all of that's true. You have to show, whether it's for standing or mootness, for standing that there's an actual harm caused by the ordinance or the variance or whatever, and that a court can redress. You have to show there's something a court can do that's redressable. How can I give you, even assuming everything you say is true, anything more than an advisory opinion? What we're asking for is an injunction that says that 770 Palmetto may not be zoned 5040. In the future. As of the date of the opinion. It may not be zoned that way. So that means it's back to a B-1 zoning. Let me ask you a question. Suppose someone came along to put in some kind of public assembly having nothing to do with a religious purpose on that site. They would apply. Maybe they could get it. Maybe they couldn't. It would have to be studied by the city. And then, depending on what the city ruled, the homeowners might come back and say, strike it down, judge. But until that happens, how do I speculate that it might possibly be used in the future if that has not yet transpired? And I have no record evidence that it will transpire. What the complaint states, which the lower court completely trivialized, is that there was going to be a change in the zoning for residential purposes where this intense project could be. The city pulled back from that when there was anti-Semitism and widespread objections by the residents. So then the city says to its staff, okay, we're not going to do that anymore. We're not going to expand residential opportunities. We're now going to create. We want you staff to figure out how we can change the zone so that they land in this spot where right now they could not otherwise be placed. Our argument is that that union between the Chabad and the city is the violation of the establishment clause, that behind closed doors this was all put together, and once the hearings were done, then my clients learned exactly what had been planned. Tell me specifically what the harm is if they can't build on that site because the circuit court killed the project dead. Well, they could reapply any day. They could. Maybe they will. Maybe they won't. And if they do, you can come back and say you can't. Let's say they came back and said we want to build it without a museum and we want to build it 30 feet high, not 40. They could theoretically do that. But until they do that, what you're asking the court to say, I think, and maybe I've got this wrong, is to bar in the future what might but we don't know whether it will happen and we don't know in what form it will happen because we don't know, one, who will apply and we don't know, two, what the application will say. But you want us to speculate and lay out the possibility that if they come back and if they do this and if it's that size, prevent them from doing it, to kill it dead prospectively on the speculation that it might happen. And I suggest to you that seems to me to be asking something that a federal court of limited jurisdiction doesn't have the power to do. What am I missing there? I think what's being missed is that we are not talking about anymore the approvals. The approvals that race through the city and were given that should have never been given, including to the museum use, which is, of course, what Royal Palms held, that that was illegal. So they wipe out all the approvals. Now we're back to this piece of property. This piece of property was still rezoned through the favoritism by the city of the Chabad. And the motive for that- Let me stop right there. The amendment in the new ordinance just added places of worship, a neutral term, to the definition of places of public assembly. That's all it did, right? What it did is it displaced- I'm talking about the face of the ordinance. It just put the term places of worship into the definition of places of public assembly. Is that correct? First, it removed the three public assembly uses that were then permitted on that lot. It broadened the definition of permitted public assembly places. It broadened it. It did. By adding places of worship. Yes, it did. Which is a neutral term. Yes. Okay. Help me with this. I don't really care why they did it. I look at- they may have done it because there was lobbying by one place of worship. But it benefits all places of worship, correct? Everybody would be benefited by it, right? Your Honor, possibly, but they did not get- Why is that facial? You only have two types of constitutional challenges that you want, whatever this relief is you want. One's facial and one's as applied. You've basically said you're as applied. It's no longer here because this site approval has now been challenged and held invalid and it's over. So you no longer have an as applied claim, right? We don't- no. So now you're just challenging the ordinance that facially this is unconstitutional because it was done for an improper purpose of benefiting this particular organization. That's your claim. For this piece of property. Okay, but let me ask you another question. Well, for this piece of property, that would be as applied. Anytime you get to this property, that's going to be as applied. Well, I think- But maybe you want to concede it's facially okay. Do you concede the ordinance is facially constitutional? It is facially fine. It's not required. Counsel, I spent the first five minutes asking you whether you were mounting a facial challenge on 5040 or simply as applied to this particular project with these zoning variances by the cabot at that location on Seaside Island. And you said to me, I am not seeking any facial challenge to 5040. The thrust of my attack is an as applied challenge and as applied challenge only to this project. Do I have it right or do I have that wrong? You have it right, but the challenge is to this property. Yes, I understand. So you're not challenging as a general- a facial challenge to a statute would say it's unconstitutional no matter who it's applied to. It's overbroad. It's vague. It collides with the establishment clause, whatever. The whole thing is no good, and you can't imagine any context in which it would work. Right. That's not what you're saying. No, this is not a Salerno challenge. We are not arguing it's unconstitutional in every application. Okay. So you're simply saying as applied here. Yes. Okay. When you say to this property, you really mean not the location of the property, but as to this project on that property. This zoning on this property, which was changed for the illegal purpose of making the property available and appropriate for this one religious entity. Okay. Let's go back to that. I'm looking at the state court order. They imposed another requirement. They said you've got to meet the other museum requirements, so they can't even get this project done by complying with 5040. They have to comply with other zoning regarding other museum requirements for parking, and there was another one, parking, and what else? It was only the museum permission, which is not permitted on 5040. Let's see how speculative is we're going to ever have this project here. Okay. So it goes to whether we have a justiciable issue. This is just totally speculative, nothing we can grapple with as a court in this type of situation. And as I understand it, not only do they have to comply with 5040, the public assembly, they've got two other requirements, the other zoning ordinances they're going to have to comply with. Is that not correct? If they reapply, yes. If they reapply. So we not only have this one that you're trying to challenge, there's two others they're going to have to comply with. Because the court says, actually what's so interesting, they say we're not going to honor the definition, including it and say the place of public assembly ordinance is what governs. We say all these other museum ordinances govern. So why doesn't that add another level of rank speculation as to whether this is ever going to happen? I think that to explain where my clients are coming from, it is ‑‑ I understand where they're coming from, which is a legal question. Why is this not anything we can rule on? This is a wrong under the Establishment Clause. And the question that's being asked of me, and it's perfectly fair, is there a remedy for the wrong that has been done? Why is it a wrong under the Establishment Clause to neutrally say places of worship? It doesn't matter whether it's for this property or any other property and be one, because it applies to be one generally, right? That's a facial challenge. What we're saying is that the city joined together with the Chabad behind closed doors and orchestrated a change in the zoning where nobody had any idea that this was all about creating the opportunity for the Chabad. In our complaint, we allege, and we stand by this allegation, that the city ordered city staff to create an opportunity for the Chabad, specifically. They didn't write into the zoning office in the zoning statute for the Chabad. They wrote in for places of worship. That's right, and we're not making a facial challenge. And the Chabad might come back in and say, we don't want this particular location. We want this other location and be one. But we've alleged that it was all for this location, which is the property they had access to. We allege that there was an agreement between the city and the Chabad, and during the four public hearings, no one in the public was ever informed that the purpose of what looked like a neutral, generally applicable place of public assembly amendment was, in fact, created for the purpose of this particular. That sounds like politics. They should not reelect the city council person. I don't know. It sounds like a constitutional case to me. It wouldn't be if it was an ordinary developer. It's a problem because it's a religious entity and because of the establishment clause. The religious entity doesn't own the property, do they? They have some. We don't fully know. They have some kind of arrangement. There was a comment somewhere that they're working with a developer. There is a trust that owns the property. And I think the Chabad can explain more fully what that relationship is and what's happening with it now. It's now in litigation. If I can say thank you, and I've got five minutes. Thank you. Thanks. And you have reserved your full rebuttal time, Ms. Hamilton. Thank you, and good morning. May it please the court. My name is Dan Abbott, and I'm here on behalf of the Apele City of Boca Raton. I had intended to begin my presentation by defending the decision of the district court judge finding a lack of standing, which I think is a perfectly valid decision under the circumstances. Let me ask you about that. Yes, sir. Why wouldn't they, even assuming arguendo, that you were right, that as a general matter they couldn't show actual and immediate and concrete injury, where they were alleging that if you allow the project to go forward down the road, there's a substantial problem with, one, traffic will be great, two, maybe there'll be a flood, three, if there is, egress from the island would become more difficult. These kinds of claims would be sufficiently abstract and attenuated not to provide the kind of immediate and concrete standing, which is what the district judge said. Let's assume that's right. Yes, sir. Why wasn't there taxpayer standing? To the extent the Supreme Court of the United States has said unambiguously, and we've said as recently as 2008 in Pelfrey, that a taxpayer of a municipality has standing to challenge the allocation of public money for a purpose that violates the Establishment Clause, for a religious purpose. Why wouldn't there have been taxpayer standing? Even assuming that you were right and the district court is right about the other things, and speaking for myself, I think you are. But I don't know why they wouldn't have taxpayer standing, and if they do have taxpayer standing, it seems to me that answers the first requirement of standing. Standing requires actionable and immediate harm. Second, caused by the alleged misconduct of the city. And three, that it's redressable. It doesn't answer questions two and three, but it answers the first question. Why wouldn't they have taxpayer standing to the extent they were taxpayers, they paid the city money, and city money was used, taxpayer money was used, for an unlawful purpose that advanced the interests of some religious institution? Wouldn't that give them standing at least to be heard? I don't think so, Your Honor. Let me preliminarily answer the court's question by pointing out that, as far as I can tell, that position has been abandoned. I don't see any claim in the appellant's brief challenging the finding in terms of taxpayer standing. But to more directly answer the court's question. Well, there is no finding on taxpayer standing. All you get from the district court is they don't have it. It's sort of an Ipsy Dixit assertion. It doesn't tell me why they don't have taxpayer standing. Oh, I understand. What I meant to suggest is the appellants don't seem to have challenged the position on taxpayer standing. I thought they went forward on two grounds. Admittedly, the first ground was the main ground, but I didn't read them to have abandoned taxpayer standing. Judge, unless I missed it, I have read that 40- or 50-page brief, and I don't see anything there on taxpayer standing. So as far as I can tell, the appellants have not. You say they've abandoned it. Let's suppose they haven't abandoned it. Yes, sir. And it's in their complaint for sure. Yes, sir. Remember, we're here just on a motion to dismiss. Wouldn't a taxpayer have standing as a municipal taxpayer to challenge the expenditure of government funds for this purpose if they claim it violated the establishment clause? Where it's a municipal taxpayer. The primary response that we had to that argument on the motion to dismiss, which I think was adopted by the district court judge, at least in terms of the initial complaint, is there was not a municipal expenditure within the meaning of the taxing. Well, there was the expenditure of staff money. Yes, sir. Why wouldn't that be enough? If you look at Pelfrey, that's why I raised the question. We had a case this court decided 10 years ago, Pelfrey v. Cobb County. Had you seen that case? I don't know. Let me tell you what happened in the case. Cobb County began every session of the county commission with a prayer. Taxpayers challenged that on the establishment clause grounds, said you couldn't have a cleric come in and make a prayer at the start of the session. We're not talking about merits yet, whether that's right or wrong. And the panel said that was perfectly constitutional. It was consistent with our history, et cetera. The first question is, did they get to raise it? Did they have standing to raise it? The panel said yes. And the basis for the standing was that the taxpayers, one basis for the standing, was the taxpayers had made contributions as taxpayers to the city, and city monies were used. How were the city monies used? I'll tell you how de minimis it was in that case. Staffers who worked for the Cobb County Commission surveyed all of the clerics within the county limits, sent them letters and said, would you like to voluntarily give a prayer? And a whole bunch of them said yes. And then the staffers wrote a letter afterwards thanking them if they did that. That was the extent of the taxpayer involvement. That was the extent of the expenditure of public monies, and that was enough to give them taxpayer standing. If that is correct, why wouldn't the taxpayer have standing here? I'll grant you it is utterly de minimis. And if you tried to calculate the amount of money, it would be .000 whatever, insofar as it bore on the taxpayer's expenditure. But why doesn't that give them taxpayer standing? To seek injunctive relief, assuming the case had not mooted out. Your Honor, and forgive me, I hope I'm not misspeaking here. I'm talking about Pelfrey from memory. But if I remember right, it was of special significance to the court, the postage expenses. And while, as Your Honor suggests, maybe that's de minimis, there was an actual public expenditure. It wasn't just the postage. It was that the staffers took the time to come up with the names and solicited their willingness to the clerics to participate. So it was staff time and postage. But if you added the whole thing up, it didn't amount to much. Well, Your Honor, it was our argument before the court and continues to be our argument here to the extent this is still a live issue, that the expenditure of funds, even a small amount like postage, might give one standing. But staff time is not an expenditure. We relied upon the Supreme Court decision called Flass v. Cohen for that proposition, that you pay a salaried employee what you pay that employee for a salary, and you didn't have to pay him any more because he accomplished a particular task during the workday. And so no taxpayer money. Right, but the difference in Flass v. Cohen is the taxpayer was given standing. It was a federal taxpayer there, and they've since really constricted that holding. But if the taxpayer of paying money into the federal treasury challenges a congressional enactment of money, pay for teachers to go into parochial schools and give remedial math instruction, they have standing to challenge that. But otherwise, generally being a taxpayer doesn't give you standing on a state or federal level, but the municipality, the courts have said, is different. I agree with that. It's arguably a fiction because you have a city like New York with 8 million people. The amount of money you pay in there was far less than you might pay in the state of Montana. You're just looking at the numbers. But all I'm asking is if they had, let's just assume they had taxpayer standing. Tell us why it's mooted. Well, as the questions from the bench have began, there is now no development approval. There is no closer to being a religious assembly on this piece of property as any other property in the city. And so while the appellants have denied making a facial challenge, there has really not been a single event that would elevate their status above any other property in the city in a zoning district that is zoned to allow places of public assembly. There's no closer to a development on this parcel than in any other of those parcels. Let me ask you just the – Before you do that, I just want to comment that the appellant cites Pell Free and argues taxpayer standing on page 25 of her brief. Forgive me for missing that, Your Honor. Yeah, okay. So it's a whole page of it saying there are taxpayers that even cite the Pell Free and Flash Free coin case. Very good, Your Honor. Okay. Let's assume – is there any record evidence that the Chabad has gone back to the city and said, okay, we can't go forward there pursuant to the state order, which is final, but that was simply with respect to because we had a museum as well as just the temple, and we're just going forward without the museum and we're going to take care of the parking problem too. Is there any evidence that they have gone back to do that? There is no such evidence, Your Honor, and as far as I know, it's not the case in any of that. Right. There's just nothing in this record to reflect that. Yes, sir. Anything else that you would want? We were sort of asking you a lot, and I wanted to give you a fair shot to add anything you wanted to. No, Your Honor. I'm glad we have focused in on the issues most important to the panel, and if there are no further questions, I'll – Tell us how we should treat the Royal Palm decision. Should we emphasize that it set aside the site approval and remanded the city, and it's premature for us to do anything? Is that what we should say, or should we go further and say they show that it's not just this ordinance they're going to have to comply with. There are other ordinances. It makes it even more speculative. I don't know. Is it because it's moot, speculative? How would you phrase it? In the event that the panel is inclined to conclude that there was standing until the Royal Palm decision, the Royal Palm decision took away all of the development approvals, so any prospective builder on this parcel or on any other parcel has to start at the very beginning and has to comply with all of the municipal ordinances. Of course, in this B-1 district, there's the issue identified in Royal Palm that museums are not a permissible use. There are the issues of height, whereas you've seen the Chabad has pointed out that the allowable height in this district has been decreased. And so at this point, trying to measure the adverse effects of a building that hasn't been designed pursuant to guidelines that have been changed, I think are certainly... And right now we don't even have an application for approval, or has the application just been approved and the approval has been returned? So we still have an application for approval. We don't even know that it's going to be approved. And again, the record does not reflect that there has been a subsequent application and there would have to be a subsequent application. And to the extent it's of interest to the panel, I don't believe there has, in fact, been another application. They'd have to have three times as many parking spaces as the initial application. They would certainly have to be in compliance with the district regulations for parking, which may be triggered in part based upon the square footage of the building. And again, without an application, that has not been computed yet. Thanks very much. Thank you. Good morning, Your Honors. Good morning. May it please the Court. Pavan Djud on behalf of Appelli, the Chabad of East Boca Raton. I'd like to pick up the colloquy where you left off with my fellow appellee, the city. But first, I'd like to begin with an observation about the disconnect between the complaint and appellant's theory on appeal. While the complaint attributes appellants' alleged future injuries to the scope of the Chabad's proposed site plans, appellants shift gears in their briefing before this Court and claim that the injury in this suit has always been and only been about their disenfranchisement. This results in two problems. First, to the extent that any of the complaints What does disenfranchisement mean? I thought the heart of the complaint is it violates the Establishment Clause for them to have zoned it the way they did and allowed a project to go up the way they were proposing to do. I'm not sure I understand what disenfranchisement, maybe that's a better question for the complainant than you. I do think it's a better question for them. What do you take that to mean? In their reply brief, they say that they've been disenfranchised because they were denied the ability to participate in the passage of Ordinance 540. So that's the due process claim. I think that's what they're arguing, but I'm not positive. That's a question for them. But I think that to the extent that any of the complaints alleged injuries ever satisfied Article 3, which I don't think they did, appellants abandon claims of future injury relating to the scope of the Chabad's project. So this includes increased risk of flooding or traffic. But the second problem is that the disenfranchisement theory is a novel concoction on appeal that doesn't appear in the complaint. And because they failed to plead it in their complaint, it can't form the basis for federal court jurisdiction under Article 3. And, of course, even if it could, it's the very paradigm of a generalized grievance. But I started saying that I wanted to pick up where you left off, and first I'd like to do that by talking about taxpayer standing in the Pelfrey case. Judge Marcus, I think your observation was correct, that municipal taxpayer standing is broader than what we think of under the Flass case. But even in Pelfrey, there is a distinction that's very important, which is that you find this on page 1280 of the case. Municipal taxpayers have standing to challenge unconstitutional expenditures if their interest is direct and immediate. So in that case, the individuals, the taxpayers who brought the challenge, went to the meetings where... No, no, no, let's be careful. There are two holdings in Pelfrey. There were two sets of taxpayers, if I have it right. One set of taxpayers were those folks who actually went into the commission meetings and heard the prayers and said, we have a direct and immediate interest in home. Another set of taxpayers, another set of plaintiffs, were taxpayers who never went in there. And the court's holding is in an alternative form. And the court says at 1280, the taxpayers also have standing as municipal taxpayers. That's independent from somebody who actually went into the meeting hall. I agree that there are two holdings, but within the municipal taxpayer discussion, the court says that the taxpayers have standing to challenge unconstitutional expenditures if their interest is direct and immediate. And so I think there is still a limit, and it's not just the payment of municipal tax dollars, but I could be misreading the case, but that is right before where the court concludes that these municipal taxpayers had standing to bring this particular establishment clause challenge. All right, thank you. But I'd like to turn, then, to what I believe is the heart of this appeal, which is that this case has now become boot. And to the extent that any of the injuries, if there was ever a taxpayer standing to begin with, in the complaint, now the appellants no longer have a claim of injury at all because this particular property is, the Chabad is not building on this property. It doesn't have site plans approved or pending approval on this property. Is there any indication in this record that an additional application has been filed? Absolutely not. That there were any allegations in the record that there were communications with the city about a future application? That's not in the record, and I'm not aware of any. And that's for two reasons. First, the site plans were invalidated in state court, but second, that there is a dispute over whether the TJCV Land Trust will permit Chabad to build on the property at all, and that's being litigated in state court. And as of a few days ago... Does the record reflect who owns this particular piece of land? I know that the, I think that it is in the complaint that the TJCV Land Trust owns the property. And does it indicate who TJC Land Trust is, whether Chabad is the TJC Land Trust? I'm not sure whether that's in the complaint, but the Chabad is not the TJCV Land Trust. Okay. So that was a private additional owner of the property on Seaside Village? Yes. And at one point, the TJCV Land Trust had conveyed this property to the Chabad or permitted the Chabad to build, but they are currently in litigation over whether the Chabad will be able to build on this property. And as of a few days ago, at least, nothing has been resolved in that case that I can report to you about whether the Chabad will be permitted to build on this or not. If there are no further questions from the panel, I would say that there... I would just rest by saying that there are two independent subject matter jurisdiction reasons why this court should affirm the dismissal below or find it dismissed because of this. Thank you very much. Just have a few points. You know, I have to say that the table right here illustrates my client's problem. The city and the Chabad are litigating this together, just like they engineered the zoning code together to the detriment of my clients. The redress that they're asking for is that this court hold... Well, they're litigating it together because you sued them together, didn't you? No, the Chabad is an intervener. OK. Our beef is only with the city. We only have a constitutional challenge. The Chabad has every right to try to do what it wants to do. What we're trying to do is to get the city to act like a constitutional government. The redress we're asking for is pretty simple. We would like this court to return this property to B1 zoning where it was before the illegal relationship started. Once that happens, then we're back to where we started before the scheming began. And my last point is, I just have to point out, the district court was absolutely wrong on generalized grievance. Can you tell me your best case? If they do a facially neutral statue, places of worship, even if the city did it because they like Chabad, they got together and they did it, that invalidates the city. Just tell me your best case that I would read that would establish that type of improper purpose that makes it unconstitutional under the establishment clause because it's with one particular house of worship. Right, right. Well, this isn't a facial challenge, so... I don't care what kind of challenge you want to call it. What is your best case for your side? Or two cases, just so I can read it. Okay, so the best cases for our side are Glass Roth and the 11th Circuit, in which very de minimis... What? Glass Roth? Glass Roth, R-O-T-H. And then what's the other one you want to say? The other one would be Kyriot Yoel at the Supreme Court. Okay, that's all I need. Thank you. So finally, on generalized grievance, a generalized grievance is when something like a trade organization tries to assert standing. It's not when individuals directly harmed by the decision by the government assert standing. For the court to say that because many people are affected by this decision of the city, that our clients do not have standing makes absolutely no sense. What it proves is a lot of people were harmed, but only two people brought suit. If there are no other questions, thank you very much. Thank you very much. Thank you to all parties.